COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                                                SUPREME JUDICIAL COURT
                                                                                FOR SUFFOLK COUNTY
                                                                                DOCKET NO. BD-2021-009

IN RE: EDWARD M. MAHLOWITZ.

MEMORANDUM OF DECISION

This matter comes before me on the information and record of proceedings filed by the board of bar overseers (board). For the reasons described below, I conclude that the respondent, Edward M. Mahlowitz, must be suspended from the practice of law for six months, with the last three months stayed for one year, with other conditions.[1]

1. Procedural background. On June 27, 2019, bar counsel filed a one-count petition for discipline against the respondent arising out of the respondent's representation of a client in a criminal matter. In connection with that representation, on February 20, 2017, the respondent accepted a $13,000 retainer ($3,000 in cash, and $10,000 by check) for services that, at least in substantial part, had yet to be rendered. The petition alleged that the respondent failed to segregate and safeguard the retainer funds; failed to deposit the $3,000 cash retainer into any account; deposited the $10,000 check retainer into a business operating account; used a portion of the retainer for personal or business purposes before it was earned; and failed to provide the client with a written agreement setting forth the scope of the representation and the basis for the

---

[1] The stay is conditioned on the respondent (1) consulting with the Massachusetts Law Office Management Assistance Program; (2) implementing the program's recommendations concerning the handling of client funds and documentation of fee agreements; and (3) being subject to quarterly audits for compliance by bar counsel during the one-year probationary period.

1

fee, in violation of several ethical rules.[2] By the conclusion of the representation on or about April 26, 2017, just over two months later, the respondent had earned the full amount of the retainer that he had been paid by the client.

After a one-day hearing, at which the respondent was represented by counsel, eight exhibits were admitted, and the respondent was the only witness, a hearing committee of the board issued a report concluding that the respondent knowingly and intentionally misused both the $3,000 cash portion and the $10,000 check portion of the retainer, but that the respondent neither intended to deprive the client of funds nor did any deprivation result. The hearing committee recommended that the respondent be suspended for six months, with three of the six months stayed for one year. Neither bar counsel nor the respondent appealed to the board, and the matter proceeded to the board for review. See Rules of the Board of Bar Overseers, § 3.50(c) (2011); Rules of the Board of Bar Overseers, § 3.52 (2009).

On October 13, 2020, the board made a preliminary determination to "decline to adopt the sanction recommendation of the [h]earing [c]ommittee [r]eport because a three-month served suspension is too short in light of the violations of the rules, and to allow the parties to brief the issue of why a stay of part of the suspension is appropriate in this case." Bar counsel filed a brief indicating that, while he had not appealed from the hearing committee's recommendation, he recommended that a six-month suspension be imposed, to be fully served. The respondent also filed a brief. He acknowledged that, "while there is a presumption of intentional misuse,"

---

[2] The petition alleged that the respondent violated Mass. R. Prof. C. 1.5 (b)(1) (duty to provide written communication concerning scope of representation and fees); Mass. R. Prof. C. 1.15 (b), (b)(1), (b)(3), (b)(4) (duty to safeguard client's property, maintain client funds in trust account, and segregate client funds); and Mass. R. Prof. C. 8.4 (c) and (h) engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or "other conduct that adversely reflects on [the lawyer's] fitness to practice law").

with respect to the cash portion of the retainer, see Matter of Murray, 455 Mass. 872 (2010), "there was no deprivation, and the client . . . lost no money and suffered no harm. The respondent did not, however, challenge the sufficiency of the evidence supporting the hearing committee's findings.

On January 11, 2021, without further comment or explanation, the board voted to adopt the hearing committee's report, but it recommended that the respondent be suspended from the practice of law for six months, without any period stayed. An information thereafter was filed with the court.

2. Factual background. The following facts were found by the hearing committee and adopted by the board. The respondent was admitted to the bar of the Commonwealth on May 11, 1965. On February 20, 2017, the respondent accepted a $13,000 retainer ($3,000 in cash, and a $10,000 check), from the client and agreed to charge against the retainer on an hourly basis for his representation of the client on a criminal matter. The respondent and the client orally agreed on the terms of the representation, although it was not described in writing. The respondent had previously represented the client on other matters.

When he received the retainer, the respondent had not yet performed substantial work on the criminal matter. He knew that the funds represented, in substantial part, an advance and unearned payment for services not yet rendered. He did not deposit the $10,000 check and $3,000 in cash into a client trust account. About a month later, on March 20, 2017, the $10,000 check was deposited into the respondent's operating account. The hearing committee credited the respondent's testimony that, at the time the $10,000 check was deposited, he honestly but mistakenly believed that he had earned the funds represented by the check. The hearing committee determined that the respondent had, in fact, only earned $9,800 as of the date the

check was deposited. The respondent's May 8, 2017, client invoice reflects a credit to the client of the full amount of the retainer, $13,000, notwithstanding that only $10,000 had been deposited. The hearing committee determined that the invoice was accurate, and that the respondent earned the entire amount of the invoiced fees, which totaled $21,610. The respondent did not seek to collect the balance of the invoice. On October 14, 2019, the respondent remitted $3,000 to the client after he was unable to locate the $3,000 cash retainer.

  3. Discussion. The respondent does not challenge the findings of misconduct with respect to his failure to communicate in writing to the client the basis of the fee and the scope of the services to be rendered, in violation of Mass. R. Prof. C. 1.5(b)(1). Nor does he challenge the finding that he failed properly to segregate trust property, to hold trust funds in a trust account, to safeguard trust property, to identify non-cash trust property as trust property, or that he withdrew trust funds before they were earned, in violation of Mass. R. Prof. C. 1.15 (b), (b)(1), (b)(3) and (b)(4). His focus, instead, is principally on the most serious allegation of misconduct, namely, intentional misuse of client retainer funds, without either an intent to deprive or any actual deprivation.

  a. Sufficiency of the evidence. (i) Waiver. As bar counsel correctly contends, by failing to appeal to the board from the hearing committee's findings and recommendations, the respondent waived his right to challenge those findings here. See Rules of the Board of Bar Overseers, § 3.50 (c) of the (party "conclusively deemed to have waived all objections to the findings, conclusions and recommendations of the hearing committee unless the party files an appeal as provided in subsection [a] of this section"). See also Matter of Shaughnessy, 25 Mass. Att'y Discipline Rep. 542 (2009); Matter of Boyce, 25 Mass. Att'y Discipline Rep. 74 (2009); Matter of Levine, 19 Mass. Att'y Discipline Rep. 239, 243-244 (2003). While the board's

preliminary determination that it would not affirm the hearing committee's decision effectively revived the respondent's right of appeal, see Matter of Levine, 19 Mass. Att'y Discipline Rep. at 243-244, and the respondent availed himself of the opportunity to file a brief, he did not challenge the sufficiency of the evidence underlying the hearing committee's findings. No reason, much less a compelling one, has been proffered to warrant consideration of that claim now.

> "The findings could have been challenged after the hearing committee report was filed, or after the Board's preliminary vote increasing the sanction. When a party does appeal, whether from a hearing committee report or from a preliminary vote of the Board, the Board is entitled to notice that an issue will be raised, and to the benefit of fully considered arguments on both sides of the issue. Section 3.51 of the Rules of the Board of Bar Overseers makes clear that briefs on appeal shall contain '[a] summary of the basic position of the party filing,' '[t]he grounds on which the appeal rests,' and 'argument in support of the appeal with appropriate references to the record and legal authorities.' New issues cannot be inserted at the oral argument stage. It is eminently reasonable to apply ordinary principles of waiver, founded on a need for finality of proceedings and the avoidance of piecemeal litigation, in a proceeding where experienced counsel representing an experienced attorney has twice been afforded the opportunity to appeal from the findings and conclusions on which the disputed sanction rests and has twice declined to appeal that issue. Respondent has offered no persuasive justification for requiring the Board to provide him with yet another opportunity to challenge the sufficiency of the evidence underlying those findings and conclusions."

Matter of Levine, 19 Mass. Att'y Discipline Rep. at 242-244. Cf. Sugarman v. Board of Registration in Med., 422 Mass. 338, 347 (1996) (declining to consider arguments raised for first time on appeal from administrative agency decision); Labor Relations Comm'n v. City of Everett, 7 Mass. App. Ct. 826 (1979) (city's failure to file appeal from commission's decisions foreclosed argument on appeal that orders not supported by substantial evidence).

    b. Findings. Although the respondent waived any challenge to the sufficiency of the evidence supporting the hearing committee's findings, I nonetheless have considered the arguments raised and find them without merit. The crux of the claim before this court is that, while the hearing committee declined to credit his testimony at the hearing that he did not intend

to misuse retainer funds, there was no affirmative evidence to support a contrary finding. It is established, however, that "[t]he hearing committee's determination of intent is treated as a determination of credibility." Matter of Murray, 455 Mass. 873, 882 (2010), citing Matter of Gonick, 15 Mass. Att'y Discipline Rep. 230, 234 (1999). See Matter of Driscoll, 447 Mass. 678, a 685-68 (2006). "[A]rguments hinging on [credibility] determinations generally fall outside the proper scope of our review," Matter of McBride, 449 Mass. 154, 161-162 (2007), and they will not be rejected unless it can "be said with certainty that [a] finding was wholly inconsistent with another implicit finding" (quotations and citation omitted)." Matter of Murray, 455 Mass. at 880. That is not the case here.

There was no evidence, and the hearing committee expressly did not find, that the respondent intended to deprive the client of funds, or that there was any actual deprivation. The issue was whether the respondent acted intentionally and misused client retainer funds. As to that, the hearing committee found that when the respondent received the retainer -- $3,000 in cash and $10,000 by check -- "he had not yet performed any work of substance" on the client's criminal case. He acknowledged that the funds represented, at least in substantial part "an advance and unearned payment for services yet to be rendered." He did not deposit any of the retainer funds into a trust account. The hearing committee accepted that the respondent believed he was testifying truthfully at the hearing, but it nonetheless declined to credit testimony that "he could not say what happened to the [cash] because he simply misplaced it," and his denial of intentionality. It explained its reasoning: it was undisputed that it was the respondent's usual practice to deposit client retainer funds into a trust account, and the hearing committee credited the respondent's prior sworn statement to bar counsel explaining that he had intentionally held the retainer (rather than depositing it) until a prehearing conference occurred to determine

whether the client's criminal case could be resolved for less than the full amount of the retainer. Contrast Matter of Balliro, 453 Mass. 75, 85 (2009) (declining to credit testimony that respondent had convinced herself of her own false story). The hearing committee was not required to credit the respondent's testimony at the hearing, it explained its reasoning, and those reasons are both supported by the record and not inconsistent with other findings. See Matter of Strauss, 479 Mass. 294, 298 (2018); Matter of London, 427 Mass. 477, 482-483 (1998) (hearing committee not obligated to believe respondent's version of facts; failing to credit the respondent does not cause impermissible shift of burden of proof).[3]

      c. Appropriate sanction. The presumptive sanctions generally applied to cases involving intentional misuse of traditional client funds do not apply to all cases involving misuse of client retainer funds. See Matter of Sharif, 459 Mass. 558, 570 (2011). While misuse of retainer funds -- whether in the form of check or cash -- is a "serious disciplinary violation," it may be "different in severity from the misuse of client funds that will never belong to the attorney." Matter of Sharif, 459 Mass. at 568. See Matter of Pudlo, 460 Mass. 400, 406 (2011) (whether intentional or negligent, misuse of retainer funds "militates toward a more textured comparison of the facts and circumstances of the case to other similar matters in which disciplinary sanctions have been imposed, rather than leaping right to a presumptive set of sanctions").

Giving due deference to the board's recommendation, I accept that the respondent's misconduct warrants a six-month suspension from the practice of law. I agree with the hearing

---

[3] It is unnecessary to consider, in this case, whether the presumptions outlined in Matter of Murray, 455 Mass. 872 (2010), apply equally to the receipt of cash retainer funds and cash traditional client funds. The hearing committee made findings with and without applying the Murray presumptions.

committee, however, that the final three months should be stayed for one year. In my view, this case is reasonably comparable to Matter of Carmel-Montes, 35 Mass. Att'y Discipline Rep. 35 (2019) (six-month suspension for intentional misuse of a client retainer without intent to deprive or actual deprivation, but aggravated by prior discipline). Either because deprivation was at issue, or because the scope of the misconduct was broader, I view the respondent's misconduct as less severe than Matter of Pudlo, 460 Mass at 406 (one-year suspension with six months stayed for negligent misuse of a retainer with deprivation and failure to keep records); Matter of Weisman, 30 Mass. Att'y Disc. R. 440 (2014) (one-year suspension for depositing retainer funds into an operating account, commingling, intentionally misusing retainer funds with deprivation, and failing to return unearned fees); and Matter of Hopwood, 24 Mass. Att'y. Disc. R. 354 (2008) (one-year suspension for intentionally misusing retainer funds, failure to return client files, failure to render an accounting upon request, and failure to cooperate with bar counsel).

Because the hearing committee determined that the respondent's misuse of retainer funds was intentional, a greater sanction is warranted than has sometimes been imposed in cases involving negligent misuse of client funds coupled with other misconduct, even though deprivation is not at issue. See Matter of Mauser, 31 Mass. Att'y Discipline Rep. 423, 424-425 (2015) (three-month suspension, stayed for one year, for negligent misuse of client funds without deprivation, commingling, and failing to provide a written fee agreement; aggravated by prior public reprimand); Matter of McCarthy, 21 Mass. Att'y Discipline Rep. 471, 472-473 (2005) (stipulation to public reprimand for commingling and negligent misuse of client funds without deprivation, and failure maintain adequate records). See also Matter of Walker, 17 Mass. Att'y Discipline Rep. 585 (2001) (six-month suspension for commingling client settlement funds in an

operating account with personal funds, resulting in negligent misuse with deprivation, aggravated by two prior admonitions).

With respect to aggravating factors, an increased sanction "may be appropriate where the attorney has a prior history of discipline," see Matter of Murray, 455 Mass. at 882, even where the prior misconduct is unrelated to present charges. Id. I recognize that some forty-years ago, the respondent was publicly censured for unrelated misconduct. See Matter of Mahlowitz, 1 Mass. Att'y Discipline Rep 189 (1979). I have considered the record of past misconduct but, like the hearing committee and the board, give it little weight in these circumstances. See Matter of Dawkins, 412 Mass. 90, 96 (1992). I also recognize and consider that the hearing committee determined that the respondent's misuse of retainer funds was aggravated by his failure to keep the client informed of the status of the retainer funds and billings, and by his substantial experience in the practice of law. See Matter of Crossen, 450 Mass. 533, 580 (2008). There are no factors to be considered in mitigation. Giving the aggravating factors due weight, I conclude that a somewhat lesser served suspension is warranted than was imposed in Matter of Carmel-Montes, 35 Mass. Att'y Discipline Rep. 35 (six-month term suspension).

4. Conclusion. "[O]ur case law has consistently maintained different sanctions for commingling alone, negligent misuse, intentional misuse, and intentional misuse with deprivation." Matter of Murray, 455 Mass. at 887, citing Matter of Schoepfer, 426 Mass. 183, 187 (1997) ("intentional use of clients' funds normally calls for 'a term suspension of appropriate length'"). In this case, the respondent's failure to communicate to his client in writing the scope of the representation, his failure to deposit the retainer funds into a trust account until earned, and failure to appropriately safeguard client funds, violated the disciplinary rules just as surely as the other intentional misconduct that was established. I am mindful of the distinction that has been

drawn between traditional client funds and retainer funds, which includes that the "entirety of the retainer is usually expected to be earned by the attorney . . . [a]s a result, misuse of this category of client funds may arise from errors of timing -- using funds that an attorney expects to belong to [him] that do not yet belong to [him]," Matter of Sharif, 459 Mass. at 568, and that a portion of the retainer funds were tendered in the form of cash. Considering the cumulative effect of the misconduct, I conclude that an order shall enter suspending the respondent for a period of six months, with the last three months stayed for one year on condition that the respondent: (1) promptly consult with the Massachusetts Law Office Management Assistance Program; (2) implement any recommendation that the program may make concerning the handling of client funds and documentation of fee agreements; and (3) be subject to quarterly audits for compliance by bar counsel during the one-year probationary period.

So ordered.

/s/ Serge Georges, Jr.
Serge Georges, Jr.
Associate Justice

Dated: June 22, 2021

A True Copy
Attest
6/22/2021  /s/ Stephen Crone
/Date              Assistant Clerk